Electronically Filed
Intermediate Court of Appeals
CAAP-14-0001310
13-DEC-2016
08:59 AM

NO. CAAP-14-0001310

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

RAY A. TAGAMA, Claimant/Appellee,
v.
STATE OF HAWAI'I, UNIVERSITY OF HAWAI'I, Employer/Appellant,
and
FIRMS CLAIMS SERVICES, Third-Party Administrator/Appellant

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2012-338 (2-12-45174))

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Foley and Ginoza, JJ.)

Employer/Appellant State of Hawai'i, University of
Hawai'i and Third-Party Administrator/Appellant Firms Claims
Services (**Appellants**) appeal from the October 22, 2014 Decision
and Order by the Labor and Industrial Relations Appeals Board
(**LIRAB**) that was favorable to Claimant/Appellee Ray A. Tagama
(**Tagama**) as to his claim for workers' compensation benefits.

On appeal, Appellants raised three points of error
contending the LIRAB erred:

(1) in failing to properly and fully recognize the
import of its Finding of Fact (**FOF**) 31, which acknowledged
Tagama's specific knowledge of the compensable nature of his
bilateral knee condition in 2006, and by erroneously re-
characterizing the injury;

(2) in its reading and interpretation of the statutory
language in Hawaii Revised Statutes (**HRS**) § 386-82 (2015 Repl.)

to conclude that the statute of limitations did not begin to run until Tagama's last day of work; and

(3) in its legal analysis concluding in favor of Tagama's claim based on the cumulative impact of his employment on his knee condition, rather than the work injury claimed to have occurred on January 9, 2012.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we affirm.

Appellants argue that the LIRAB misinterpreted the statutory language of HRS §386-82[1] to erroneously conclude that the statute of limitations began to run on Tagama's last day of work, January 9, 2012. Appellants contend instead that the statute of limitations began to run when Tagama sought medical treatment in November 2006. In particular, Appellants point to FOF 31 as establishing when Tagama understood the compensable nature of his injury.

The "time period for notice or claim does not begin to run until the claimant, as a reasonable [person], should recognize the nature, seriousness and probable compensable character of [an] injury or disease." Demond v. Univ. of Hawaii, 54 Haw. 98, 104, 503 P.2d 434, 438 (1972)(emphasis added) (citation omitted).

The relevant and undisputed findings by the LIRAB which relate to whether Tagama, as a reasonable person, "should have

---

[1]     HRS § 386-82 provides in relevant part:

HRS §386-82.  **Claim for compensation; limitation of time.** The right to compensation under this chapter shall be barred unless a written claim therefor is made to the director of labor and industrial relations:

    (1)    Within two years after the date at which the effects of the injury for which the employee is entitled to compensation have become manifest; and

    (2)    Within five years after the date of the accident or occurrence which caused the injury.

recognized the nature, seriousness and probable compensable character" of his knee injury are as follows:

### Prior Knee condition from 2004 to 2012

5. In 2004, Claimant was involved in a non-industrial fall from a bridge in which he injured his right knee. X-rays following the injury showed mild degenerative changes in the right knee. Claimant weighted 350 lbs. in 2004.

6. In 2006, Claimant experienced increased pain in both knees. At a November 22, 2006 visit with John Frauens, M.D., an orthopedic specialist, Claimant was diagnosed with osteoarthritis of the knees. Dr. Frauens told Claimant to lose weight and to expect the need for knee replacement surgery in the future. X-rays, performed on November 22, 2006, showed mild degenerative changes in both knees.

7. On April 7, 2008, Claimant's x-rays showed moderate osteoarthritis in the right knee and mild osteoarthritis in the left knee.

8. After a three-year hiatus, claimant returned to see Dr. Frauens on November 2, 2009, for increased pain in the knees. Dr. Frauens administered steroid injections to claimant's knees.

9. According to Mark Shaied, M.D., x-rays in November 2009 showed moderate arthritis that was considered significant but not yet quite "bone-on-bone."

10. On June 24, 2010, Claimant treated with Patrice Tim Sing, M.D., an internist. Dr. Tim Sing advised Claimant to lose weight and to exercise. She said it was better to do that than to stop work.

11. On July 3, 2010, Andrea Snow, M.D., an orthopedist, talked to Claimant about losing weight and changing careers to one that would not require so much time on his feet. Dr. Snow felt that Claimant could decrease his knee pain with a more sedentary job.

12. On August 12, 2010, Dr. Snow advised Claimant that he was at that time too heavy and too young for knee replacement surgery. She administered steroid injections to both knees.

13. On October 12, 2011, Claimant saw physician-assistant, Michael Green, PA-C, for increased bilateral knee pain secondary to the physical demands of his job. Claimant reported that his pain improved after a period of rest from work.

14. From 2010 to 2012, Claimant engaged in part-time concurrent employment at Pizza Hut, working 10-15 hours per week. His knee condition made it difficult for him to stand at this job.

### Last Day of Work

15. On January 9, 2012, Claimant was at work for Employer preparing equipment and disposing trash. After the third load of trash, Claimant's knees buckled. He experienced significant pain and was unable to complete his

shift. Claimant did not return to work after January 9, 2012.

. . . .

Claimant's Testimony at Trial

. . . .

31. As early as 2006, Claimant felt that his bilateral knee symptoms worsened with work but improved after rest. <u>Claimant testified that he thought about filing a workers' compensation claim in 2006, but did not do so because he was in school, his bilateral knee problem was not that bad at the time, and he was afraid a claim could affect his job</u>. Claimant further testified that his <u>pain symptoms from his bilateral knee condition increased and worsened in 2010</u>. The Board credits Claimant's testimony.

(Emphases added.)

Tagama's pre-existing injury began in 2004 and was not work-related. In our view, the findings by the LIRAB do not support a conclusion that Tagama should have reasonably recognized "the nature, seriousness and probable compensable character" of his knee injury in 2006. The LIRAB's undisputed findings include that, in 2006, Tagama was told to lose weight and to expect the need for a knee replacement in the future, and the LIRAB credited Tagama's testimony that although he thought about filing a worker's compensation claim in 2006, his knee problem was not that bad at the time. There is no finding that Tagama had to miss work in 2006 due to his knee condition, or that any doctor suggested that Tagama limit or stop his work activities. He continued to work.

Given the undisputed findings by the LIRAB and especially FOF 11, it appears that the earliest Tagama reasonably should have recognized "the nature, seriousness and probable compensable character" of his knee injury was on July 3, 2010, when Dr. Andrea Snow talked to Tagama about changing careers to decrease his knee pain. Moreover, as set forth in FOF 31, the LIRAB credited Tagama's testimony that "his pain symptoms from his bilateral knee condition increased and worsened in 2010." See <u>Flor v. Holguin</u>, 94 Hawai'i 70, 9 P.3d 382 (2000)(holding that the statute of limitations began to run when the claimant, a dental hygienist, discovered that she had contracted hepatitis C); <u>Hayashi v. Scott Co.</u>, 93 Hawai'i 8, 994 P.2d 1054 (2000);

4

<u>Tomita v. Hotel Serv. Ctr.</u>, 2 Haw. App. 157, 159, 628 P.2d 205, 207 (1981). Even assuming that the statute of limitations began to run on July 3, 2010, Tagama timely filed his claim for workers' compensation benefits on March 6, 2012. Therefore, Tagama's claim was not time barred.

Appellants also argue that the LIRAB's legal analysis of Tagama's "work injury" is misplaced and erroneous. Appellants' arguments are somewhat difficult to discern, but in their points of error, Appellants contend the LIRAB should have only determined whether the work event on January 9, 2012 aggravated, accelerated or exacerbated Tagama's underlying knee condition. We do not agree. In an order dated August 14, 2013, the LIRAB determined that "[a]s the issue is presently phrased in the Pretrial Order, Claimant is not precluded from arguing either a discrete accident or cumulative trauma theory and Employer is not precluded from raising applicable defenses thereto, including a statute of limitations defense." Appellants do not challenge this order, and thus the LIRAB did not err in considering whether Tagama's knee condition was aggravated or exacerbated by his work activities beyond January 9, 2012.

A compensable injury requires a "nexus between the employment and the injury." <u>Tate v. GTE Hawaiian Telephone Co.</u>, 77 Hawai'i 100, 103, 881 P.2d 1246, 1249 (1994). The unitary test "considers whether there is a sufficient work connection to bring the accident within the scope of the statute" and "requires the finding of a causal connection between the injury and any incidents or conditions of employment." <u>Id.</u> The unitary test applies to cases involving the compensability of an injury resulting from the aggravation of a pre-existing condition, as is the case here. <u>See</u> <u>Akamine v. Hawaiian Packing & Crating Co.</u>, 53 Haw. 406, 495 P.2d 1164 (1972).

The evidence is undisputed that Tagama had a pre-existing osteoarthritis knee condition. Tagama's work history and work duties from 2000 to 2012 as groundskeeper involved physical labor that kept him on his feet daily, and "[h]is work duties involved frequent walking, bending, squatting, kneeling,

lifting, and other weight bearing activities." Given the statewide staff cutbacks, Tagama often worked short-handed, sometimes for months at a time. On January 9, 2012, while at work, Tagama's knees buckled while preparing equipment and disposing trash. Tagama was unable to complete his shift and did not return to work.

The evidence here supports the LIRAB's conclusion that Tagama's work duties aggravated and accelerated his knee condition. Joseph DiCostanzo, M.D., an occupational medicine physician, stated on August 6, 2012 that Tagama's "position as a groundskeeper" had aggravated the underlying bilateral osteoarthritis of his knee. Also, evidence provided by Peter Diamond, M.D. (**Dr. Diamond**), an orthopedic surgeon, showed cumulative work from 2006 to 2012 "materially increased [Tagama's] risk for development of knee arthritis and most likely accelerated the rate of degeneration." Dr. Diamond also opined that "the cumulative performance of heavy labor over the years permanently aggravated [Tagama's] underlying osteoarthritis."

The presumption that a claim is for a covered work injury imposed by HRS § 386-85 (2015 Repl.) "imposes upon the employer the burden of going forward with the evidence and the burden of persuasion." Akamine, 53 Haw. at 408, 495 P.2d at 1166. The presumption is rebutted "only by substantial evidence that [the injury] is unrelated to the employment." Id.

The LIRAB credited the medical opinions of Dr. Diamond and Dr. DiCostanzo in finding that Tagama's work activities permanently aggravated or accelerated Tagama's underlying bilateral knee osteoarthritis. On the other hand, it found that Appellants' expert, Brian Mihara, M.D., an occupational medicine physician, who opined that Tagama's injury was not work related, did not specifically address whether Tagama's work activities aggravated or accelerated his underlying osteoarthritis condition.

We conclude that Appellants failed to overcome the presumption that Tagama's bilateral knee osteoarthritic condition

was a covered work injury.  See Van Ness v. State, Dep't of Educ., 131 Hawai'i 545, 558, 319 P.3d 464, 477 (2014).

Therefore,

IT IS HEREBY ORDERED that the October 22, 2014 Decision and Order by the Labor and Industrial Relations Appeals Board is affirmed.

DATED:  Honolulu, Hawai'i, December 13, 2016.

On the briefs:

Paul A. Brooke
(Leong Kunihiro Benton & Brooke)
for Employer/Appellant and
Third-Party Administrator/
Appellant.

Robert Ling Sung Nip
for Claimant/Appellee.

Craig H. Nakamura
Chief Judge

Daniel R. Foley
Associate Judge

Associate Judge

7